ZACHARY A. KELLER (Texas 24087838)
zkeller@ftc.gov; (214) 979-9382
REID A. TEPFER (Texas 24079444)
rtepfer@ftc.gov; (214) 979-9395
EDWARD HYNES (New York 4887584)
ehynes@ftc.gov; (214) 979-9381
Federal Trade Commission
1999 Bryan Street, Suite 2150
Dallas, Texas 75201
Fax: (214) 953-3079

## UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| **FEDERAL TRADE COMMISSION**, | Case No.: 1:20-cv-01060-DAD-SKO |
| Plaintiff, | **STIPULATED ORDER FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT AS TO DEFENDANT STEPHEN MEIS** |
| vs. | |
| **GOLDEN SUNRISE NUTRACEUTICAL, INC.**, *et al.*, | |
| Defendants. | |

Plaintiff, the Federal Trade Commission ("Commission" or "FTC"), filed its Complaint For Permanent Injunction and Other Equitable Relief ("Complaint"), pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), (Doc. No. 2.)  The Commission and Defendant Stephen Meis ("Meis") stipulate to the entry of this Stipulated Order for Permanent Injunction and Monetary Judgment ("Order") to resolve all matters in dispute in this action between them, including potential action by Plaintiff under Section 19(a)(2) of the FTC Act, 15 U.S.C § 57b(a)(2).

THEREFORE, IT IS ORDERED as follows:

**STIPULATED PERMANENT INJUNCTION AND MONETARY JUDGMENT AS TO STEPHEN MEIS- PAGE 1**

**FINDINGS**

1.      This Court has jurisdiction over this matter.

2.      The Complaint charges that Defendants participated in deceptive acts or practices in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52, in connection with the labeling, advertising, marketing, distribution, and sale of products they claim will treat, prevent, or cure COVID-19, cancer, and Parkinson's disease.

3.      Defendant Meis neither admits nor denies any of the allegations in the Complaint, except as specifically stated in this Order. Only for purposes of this action, Defendant Meis admits the facts necessary to establish jurisdiction.

4.      Defendant Meis waives any claim that he may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Order, and agree to bear his own costs and attorney fees.

5.      Defendant Meis and the Commission waive all rights to appeal or otherwise challenge or contest the validity of this Order.

**DEFINITIONS**

For purposes of this Order, the following definitions apply:

A.       "**Covered Product**" means any Dietary Supplement, Food, or Drug,  including the products Defendants have marketed as ImunStem, Aktiffvate, AnterFerron-1, AnterFerron-2, CrProtein, DetoxHerb-1, DetoxHerb-2, DetoxHerb-NR, DetoxHerb-PI, KemoHerb-1, KemoHerb-2, KemoHerb-NR, KemoHerb-PI, HyProtein-1, HyProtein-2, HyProtein-3, HyProtein-4, and LyProtein.

B.       "**Defendants**" means all of the Corporate Defendants and Individual Defendants,

STIPULATED PERMANENT INJUNCTION AND MONETARY JUDGMENT
AS TO STEPHEN MEIS- PAGE 2

individually, collectively, or in any combination.

      1.   "**Corporate Defendants**" means Golden Sunrise Nutraceutical, Inc. and Golden Sunrise Pharmaceutical, Inc., and their successors and assigns.

      2.   "**Individual Defendants**" means Huu Tieu and Stephen Meis.

C.    "**Dietary Supplement**" means: (1) any product labeled as a dietary supplement or otherwise represented as a dietary supplement; or (2) any pill, tablet, capsule, powder, softgel, gelcap, liquid, or other similar form containing one or more ingredients that are a vitamin, mineral, herb or other botanical, amino acid, probiotic, or other dietary substance for use by humans to supplement the diet by increasing the total dietary intake, or a concentrate, metabolite, constituent, extract, or combination of any ingredient described above, that is intended to be ingested, and is not represented to be used as a conventional food or as a sole item of a meal or the diet.

D.    "**Drug**" means: (1) articles recognized in the official United States Pharmacopoeia, official Homoeopathic Pharmacopoeia of the United States, or official National Formulary, or any supplement to any of them; (2) articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in humans or other animals; (3) articles (other than Food) intended to affect the structure or any function of the body of humans or other animals; and (4) articles intended for use as a component of any article specified in (1), (2), or (3); but does not include devices or their components, parts, or accessories.

E.    "**Essentially Equivalent Product**" means a product that contains the identical ingredients, except for inactive ingredients (e.g., inactive binders, colors, fillers, excipients), in the same form and dosage, and with the same route of administration (e.g., orally, sublingually),

as the Covered Product; provided that the Covered Product may contain additional ingredients if reliable scientific evidence generally accepted by experts in the field indicates that the amount and combination of additional ingredients are unlikely to impede or inhibit the effectiveness of the ingredients in the Essentially Equivalent Product.

F.      "**FDA**" means the United States Food and Drug Administration.

G.      "**Food**" means: (1) any article used for food or drink for humans or other animals; (2) chewing gum; and (3) any article used for components of any such article.

## ORDER

## I.      PROHIBITED REPRESENTATIONS REGARDING HEALTH-RELATED CLAIMS REQUIRING HUMAN CLINICAL TESTING FOR SUBSTANTIATION

**IT IS ORDERED** that Defendant Meis and his officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, or sale of any Covered Product are permanently restrained and enjoined from making, or assisting others in making, expressly or by implication, any representation that such product:

(1) treats, mitigates the symptoms of, or cures COVID-19;

(2) treats, mitigates the symptoms of, or cures cancer;

(3) treats, mitigates the symptoms of, or cures Parkinson's disease; or

(4) prevents, treats, mitigates the symptoms of, or cures any disease, unless the representation is non-misleading, and, at the time of making such representation, they possess and rely upon competent and reliable scientific evidence substantiating that the representation is true.

For purposes of this Section, "competent and reliable scientific evidence" must consist of human clinical testing of the Covered Product, or of an Essentially Equivalent Product, that is sufficient in quality and quantity, based on standards generally accepted by experts in the relevant disease, condition, or function to which the representation relates, when considered in light of the entire body of relevant and reliable scientific evidence, to substantiate that the representation is true. Such testing must be: (1) randomized, double-blind, and placebo-controlled; and (2) conducted by researchers qualified by training and experience to conduct such testing. In addition, all underlying or supporting data and documents generally accepted by experts in the field as relevant to an assessment of such testing as described in the Section titled "Preservation of Records Relating to Competent and Reliable Human Clinical Tests or Studies" must be available for inspection and production to the Commission. Persons covered by this Section have the burden of proving that a product satisfies the definition of an Essentially Equivalent Product.

## II.   PROHIBITED REPRESENTATIONS: OTHER HEALTH-RELATED CLAIMS

**IT IS FURTHER ORDERED** that Defendant Meis and his officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, or sale of any Covered Product are permanently restrained and enjoined from making, or assisting others in making, expressly or by implication, any representation other than representations covered under the Section of this Order entitled "Prohibited Representations Regarding Health-Related Claims Requiring Human Clinical Testing For Substantiation" about the health benefits, performance,

efficacy, safety, or side effects of any Covered Product, unless the representation is non-misleading, and, at the time of making such representation, they possess and rely upon competent and reliable scientific evidence that is sufficient in quality and quantity based on standards generally accepted by experts in the disease, condition, or function to which the representation relates, when considered in light of the entire body of relevant and reliable scientific evidence, to substantiate that the representation is true.

For purposes of this Section, "competent and reliable scientific evidence" means tests, analyses, research, or studies (1) that have been conducted and evaluated in an objective manner by experts in the relevant disease, condition, or function to which the representation relates; (2) that are generally accepted by such experts to yield accurate and reliable results; and (3) that are randomized, double-blind, and placebo-controlled human clinical testing of the Covered Product, or of an Essentially Equivalent Product, when such experts would generally require such human clinical testing to substantiate that the representation is true. In addition, when such tests or studies are human clinical tests or studies, all underlying or supporting data and documents generally accepted by experts in the field as relevant to an assessment of such testing as set forth in the Section entitled "Preservation of Records Relating to Competent and Reliable Human Clinical Tests or Studies" must be available for inspection and production to the Commission. Persons covered by this Section have the burden of proving that a product satisfies the definition of an Essentially Equivalent Product.

### III.   PRESERVATION OF RECORDS RELATING TO COMPETENT AND RELIABLE HUMAN CLINICAL TESTS OR STUDIES

**IT IS FURTHER ORDERED** that, with regard to any human clinical test or study ("Test") upon which Defendant Meis relies to substantiate any claim covered by this Order,

Defendant Meis must secure and preserve all underlying or supporting data and documents generally accepted by experts in the field as relevant to an assessment of the Test, including:

A.      All protocols and protocol amendments, reports, articles, write-ups, or other accounts of the results of the Test, and drafts of such documents reviewed by the Test sponsor or any other person not employed by the research entity;

B.      All documents referring or relating to recruitment; randomization; instructions, including oral instructions, to participants; and participant compliance;

C.      Documents sufficient to identify all Test participants, including any participants who did not complete the Test, and all communications with any participants relating to the Test; all raw data collected from participants enrolled in the Test, including any participants who did not complete the Test; source documents for such data; any data dictionaries; and any case report forms;

D.      All documents referring or relating to any statistical analysis of any Test data, including any pretest analysis, intent-to-treat analysis, or between-group analysis performed on any Test data; and

E.      All documents referring or relating to the sponsorship of the Test, including all communications and contracts between any sponsor and the Test's researchers.

*Provided, however,* the preceding preservation requirement does not apply to a Reliably Reported Test, unless the Test was conducted, controlled, or sponsored, in whole or in part by: (1) any Defendant; (2) any Defendant's officers, agents, representatives, or employees; (3) any other person or entity in active concert or participation with any Defendant; (4) any person or entity affiliated with or acting on behalf of any Defendant; (5) any supplier of any ingredient

contained in the product at issue to any of the foregoing or to the product's manufacturer; or (6) the supplier or manufacturer of such product.

For purposes of this Section, "Reliably Reported Test" means a report of the Test has been published in a peer-reviewed journal, and such published report provides sufficient information about the Test for experts in the relevant field to assess the reliability of the results.

For any Test conducted, controlled, or sponsored, in whole or in part, by Defendant Meis, Defendant Meis must establish and maintain reasonable procedures to protect the confidentiality, security, and integrity of any personal information collected from or about participants. These procedures must be documented in writing and must contain administrative, technical, and physical safeguards appropriate to the size, complexity, nature, and scope of Defendant Meis's activities, and the sensitivity of the personal information collected from or about the participants.

## IV.   PROHIBITED MISREPRESENTATIONS REGARDING TESTS, STUDIES, OTHER RESEARCH, OR FDA APPROVAL

**IT IS FURTHER ORDERED** that Defendant Meis and his officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, or sale of any product are permanently restrained and enjoined from misrepresenting, in any manner, expressly or by implication:

A.   That any Covered Product is:

(i)  clinically proven to treat, mitigate the symptoms of, or cure COVID-19;

(ii) clinically proven to treat, mitigate the symptoms of, or cure cancer;

(iii) clinically proven to treat, mitigate the symptoms of, or cure Parkinson's

disease;

(iv) clinically proven to prevent, treat, mitigate the symptoms of, or cure any disease or condition;

(v) accepted, approved, authorized, endorsed, or proven effective by the FDA; or

(vi) accepted, approved, authorized, or registered by the FDA as a Dietary Supplement, Drug, or Regenerative Medicine Advance Therapy;

B.      That the performance or benefits of any product are scientifically or clinically proven or otherwise established; or

C.      The existence, contents, validity, results, conclusions, or interpretations of any Test, study, or other research.

## V.      FDA APPROVED CLAIMS

**IT IS FURTHER ORDERED** that nothing in this Order prohibits Defendant Meis or his officers, agents, employees, and attorneys, or all other persons in active concert or participation with any of them, from:

A.      For any Drug, making a representation that is approved in labeling for such Drug under any tentative final or final monograph promulgated by the FDA, or under any new Drug application approved by the FDA; and

B.      For any product, making a representation that is specifically authorized in labeling for such product by regulations promulgated by the FDA pursuant to the Nutrition Labeling and Education Act of 1990 or authorized under Sections 303-304 of the Food and Drug Administration Modernization Act of 1997.

## VI.   CERTAIN CONSUMER DEBTS EXTINGUISHED

**IT IS FURTHER ORDERED** that Defendant Meis and his officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly:

A.   Are permanently restrained and enjoined from:

    1.   Collecting upon or making any attempt to collect upon any debt arising from the sale of a Covered Product;

    2.   Selling, assigning, or otherwise transferring, any debt arising from the sale of a Covered Product; and

    3.   Furnishing or reporting any debt arising from the sale of a Covered Product to any consumer reporting agency.

B.   Defendant Meis shall, within 10 business days of entry of this Order, request that any consumer reporting agency that Defendants furnished with information relating to any debt arising from the sale of a Covered Product delete and extinguish the debt from the consumer's credit reporting file.

## VII.   MONETARY JUDGMENT

**IT IS FURTHER ORDERED** that:

A.   Judgment in the amount of One Hundred and Three Thousand, Four Hundred and Twenty Dollars ($103,420) is entered in favor of the Commission against Defendant Meis as monetary relief.

B.   Defendant Meis is ordered to pay to the Commission One Hundred and Three Thousand, Four Hundred and Twenty Dollars ($103,420), which, as Defendant Meis stipulates,

his undersigned counsel holds in escrow for no purpose other than payment to the Commission. Such payment must be made within 7 days of entry of this Order by electronic fund transfer in accordance with instructions to be provided by a representative of the Commission.

## VIII.   ADDITIONAL MONETARY PROVISIONS

**IT IS FURTHER ORDERED** that:

A.      Defendant Meis relinquishes dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Order and may not seek the return of any assets.

B.      The facts alleged in the Complaint will be taken as true, without further proof, in any subsequent civil litigation by or on behalf of the Commission, including in a proceeding to enforce its rights to any payment or monetary judgment pursuant to this Order, such as a nondischargeability complaint in any bankruptcy case.

C.      The facts alleged in the Complaint establish all elements necessary to sustain an action by the Commission pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and this Order will have collateral estoppel effect for such purposes.

D.      Defendant Meis acknowledges that his Taxpayer Identification Numbers (Social Security Numbers or Employer Identification Numbers), which Defendant Meis previously submitted to the Commission, may be used for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. §7701.

E.      All money paid to the Commission pursuant to this Order may be deposited into a fund administered by the Commission or its designee to be used for consumer redress and any attendant expenses for the administration of any redress fund. If a representative of the Commission decides that direct redress to consumers is wholly or partially impracticable or

money remains after redress is completed, the Commission may apply any remaining money for such other relief (including consumer information remedies) as it determines to be reasonably related to Defendant's practices alleged in the Complaint. Any money not used for such equitable relief is to be deposited to the U.S. Treasury as disgorgement. Defendant has no right to challenge any actions the Commission or its representatives may take pursuant to this Subsection.

## IX.   NOTICE TO CUSTOMERS

**IT IS FURTHER ORDERED** that Defendant Meis:

A.   Identify all consumers who were prescribed or sold a Covered Product on or after December 2016 ("Eligible Customers"):

    1.   Such Eligible Customers, and their contact information, must be identified to the extent such information is in Defendant Meis's possession, custody, or control, including from third parties.

    2.   Eligible Customers include those identified at any time up to one year after the issuance of this Order.

B.   Send each Eligible Customer a notice via electronic mail or, if electronic mailing information is not available, by physical mail:

    1.   The notice must be in the form shown in **Attachment A**.

    2.   The envelope containing any notice sent by physical mail must be in the form shown in **Attachment B**.

    3.   The subject line of the notice must state, "About Your Treatment With Golden Sunrise Products."

**STIPULATED PERMANENT INJUNCTION AND MONETARY JUDGMENT AS TO STEPHEN MEIS- PAGE 12**

4.   The notice must not include any other attachments.

C.   Notify all Eligible Customers within 45 days after the issuance date of this Order and any Eligible Customers identified thereafter within 30 days of their identification.

D.   Report on his notification program under penalty of perjury:

1.   Defendant Meis must submit a report within 90 days after the issuance date of this Order summarizing his compliance to date, including the total number of Eligible Customers identified and notified.

2.   If a representative of the Commission requests any information regarding the program, including any of the underlying customer data, he must submit it within 10 days of the request.

3.   Failure to provide required notices or any requested information will be treated as a continuing failure to obey this Order.

## X.   NOTICE TO RESELLERS

**IT IS FURTHER ORDERED** that within 30 days of the effective date of this Order, Defendant Meis must notify all retailers or resellers by sending each by first-class mail, postage paid and return receipt requested, or by courier service with signature proof of delivery, the notification letter attached as **Attachment C**. Defendant Meis must include a copy of this Order, but no other document or enclosure.

## XI.   CUSTOMER INFORMATION

**IT IS FURTHER ORDERED** that Defendant Meis and his officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who

receive actual notice of this Order, are permanently restrained and enjoined from directly or indirectly:

A.     Failing to provide sufficient customer information to enable the Commission to efficiently administer consumer redress. Defendant Meis represents that he has provided this redress information to the Commission. If a representative of the Commission requests in writing any information related to redress, Defendant Meis must provide it, in the form prescribed by the Commission, within 14 days.

B.     Disclosing, using, or benefitting from customer information, including the name, address, telephone number, email address, social security number, sensitive health information, other identifying information, or any data that enables access to a customer's account (including a credit card, bank account, or other financial account), that any Defendant obtained prior to entry of this Order in connection with the labeling, advertising, marketing, distribution, and sale of products they claim will treat, prevent, or cure COVID-19, cancer, and Parkinson's disease.

C.     Failing to destroy such customer information in all forms in their possession, custody, or control within 30 days after receipt of written direction to do so from a representative of the Commission.

*Provided, however*, that customer information need not be disposed of, and may be disclosed, to the extent requested by a government agency or required by law, regulation, or court order.

## XII.     COOPERATION

**IT IS FURTHER ORDERED** that Defendant Meis must fully cooperate with representatives of the Commission in this case and in any investigation related to or associated

with the transactions or the occurrences that are the subject of the Complaint. Defendant Meis must provide truthful and complete information, evidence, and testimony. Defendant Meis must appear for interviews, discovery, hearings, trials, and any other proceedings that a Commission representative may reasonably request upon 10 days written notice, or other reasonable notice, at such places and times as a Commission representative may designate, without the service of a subpoena.

## XIII.   ORDER ACKNOWLEDGMENTS

**IT IS FURTHER ORDERED** that Defendant Meis obtain acknowledgments of receipt of this Order:

A.      Defendant Meis, within 7 days of entry of this Order, must submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.      For 5 years after entry of this Order, Defendant Meis, for any business that such Defendant, individually or collectively with any other Defendant, is the majority owner or controls directly or indirectly, must deliver a copy of this Order to: (1) all principals, officers, directors, and LLC managers and members; (2) all employees having managerial responsibilities for conduct related to the subject matter of the Order and all agents and representatives who participate in conduct related to the subject matter of the Order; and (3) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting. Delivery must occur within 7 days of entry of this Order for current personnel. For all others, delivery must occur before they assume their responsibilities.

C.      From each individual or entity to which Defendant Meis delivered a copy of this Order, Defendant Meis must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

## XIV.   COMPLIANCE REPORTING

**IT IS FURTHER ORDERED** that Defendant Meis make timely submissions to the Commission:

A.      One year after entry of this Order, Defendant Meis must submit a compliance report, sworn under penalty of perjury:

1. Defendant Meis must: (a) identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of the Commission may use to communicate with Defendant; (b) identify all of that Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the activities of each business, including the goods and services offered, the means of advertising, marketing, and sales, and the involvement of any other Defendant (which Individual Defendants must describe if they know or should know due to their own involvement); (d) describe in detail whether and how that Defendant is in compliance with each Section of this Order; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission.

2. Additionally, Defendant Meis must: (a) identify all telephone numbers and all physical, postal, email and Internet addresses, including all residences; (b) identify all business activities, including any business for which such Defendant

performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest; and (c) describe in detail such Defendant's involvement in each such business, including title, role, responsibilities, participation, authority, control, and any ownership.

B.    For 7 years after entry of this Order, Defendant Meis must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

1.    Defendant Meis must report any change in: (a) any designated point of contact; or (b) the structure of any Corporate Defendant or any entity that Defendant Meis has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including: creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

2.    Additionally, Defendant Meis must report any change in: (a) name, including aliases or fictitious name, or residence address; or (b) title or role in any business activity, including any business for which such Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest, and identify the name, physical address, and any Internet address of the business or entity.

C.    Defendant Meis must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against such Defendant within 14 days of its filing.

D.     Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on: _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E.     Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580. The subject line must begin: *FTC v. Golden Sunrise Nutraceutical, Inc., et al.*, 1:20-cv-01060-DAD-SKO.

## XV.     RECORDKEEPING

**IT IS FURTHER ORDERED** that Defendant Meis must create certain records for 7 years after entry of the Order, and retain each such record for 5 years. Specifically, Defendant Meis, for any business that such Defendant, individually or collectively with any other Defendants, is a majority owner or controls directly or indirectly, must create and retain the following records:

A.     Accounting records showing the revenues from all goods or services sold;

B.     Personnel records showing, for each person providing services, whether as an employee or otherwise, that person's: name; addresses; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

C.      Records of all consumer complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response;

D.      All records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission; and

E.      A copy of each unique advertisement or other marketing material.

## XVI.   COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, for the purpose of monitoring Defendant Meis's compliance with this Order, and any failure to transfer any assets as required by this Order:

A.      Within 14 days of receipt of a written request from a representative of the Commission, Defendant Meis must: submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying. The Commission is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

B.      For matters concerning this Order, the Commission is authorized to communicate directly with Defendant Meis. Defendant Meis must permit representatives of the Commission to interview any employee or other person affiliated with any Defendant who has agreed to such an interview. The person interviewed may have counsel present.

C.      The Commission may use all other lawful means, including posing, through its representatives as consumers, suppliers, or other individuals or entities, to Defendant Meis or any individual or entity affiliated with Defendant Meis, without the necessity of identification or

prior notice. Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49 and 57b-1.

D.      Upon written request from a representative of the Commission any consumer reporting agency must furnish consumer reports concerning Defendant Meis pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. §1681b(a)(1).

## XVII.   RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

IT IS SO ORDERED.

Dated:   __June 11, 2021__                         _____

*Dale A. Drozd*

UNITED STATES DISTRICT JUDGE

**STIPULATED PERMANENT INJUNCTION AND MONETARY JUDGMENT**
**AS TO STEPHEN MEIS- PAGE 20**

# ATTACHMENT A

**RE: About Your Treatment With Golden Sunrise Products**

Dear [Name of Consumer]:

Our records show that you received the Emergency D-Virus Plan of Care, the Metabolic Plan of Care, or the Cancer Plan of Care.

The Federal Trade Commission (FTC), the nation's consumer protection agency, sued Dr. Stephen Meis for deceptively advertising certain products as effective ways to treat, cure, or lessen the symptoms of COVID-19, cancer, and Parkinson's disease.

Contrary to the advertising claims:

- There is no competent and reliable scientific proof that the Emergency D-Virus Plan of Care can treat, cure, or lessen the symptoms of COVID-19.

- There is no competent and reliable scientific proof that the Metabolic Plan of Care or Cancer Plan of Care can treat, cure, or lessen the symptoms of cancer.

- There is no competent and reliable scientific proof that the Metabolic Plan of Care can treat, cure, or lessen the symptoms of Parkinson's disease.

- None of the treatment plans were FDA approved, designated as Regenerative Medicine Advanced Therapies, or designated safe and effective by the FDA.

As part of a settlement with the FTC, I agreed to stop making these claims.

For more information about this lawsuit, visit https://www.ftc.gov/enforcement/cases-proceedings/202-3146/golden-sunrise-nutraceutical-inc. Learn how to spot and avoid false and unproven COVID-19 product claims at ftc.gov/coronavirus.

Sincerely,


Stephen Meis
Former Medical Director
Golden Sunrise Nutraceutical, Inc.

**ATTACHMENT B**

The envelope for the notification letter must be in the following form, with the underlined text completed as directed:

[Identify Respondent
Street Address
City, State, and Zip Code]

FORWARDING AND RETURN POSTAGE GUARANTEED ADDRESS CORRECTION SERVICE REQUESTED

<u>[Name and
mailing address of customer,
including zip code]</u>

**ATTACHMENT C**

[Date]
[Addressee]

**RE: Removal of Misleading Health Treatment Claims Made by Golden Sunrise Nutraceutical, Golden Sunrise Pharmaceutical, Huu Tieu, and Stephen Meis**

Dear Golden Sunrise Retailer:

The Federal Trade Commission (FTC), the nation's consumer protection agency, sued Dr. Stephen Meis for deceptively advertising certain products as effective ways to treat, cure, or lessen the symptoms of COVID-19, cancer, and Parkinson's disease.

To settle the charges, I have agreed to:

- Stop making claims that the Emergency D-Virus Plan of Care can treat, cure, or lessen the symptoms of COVID-19.

- Stop making claims that the Metabolic Plan of Care or Cancer Plan of Care can treat, cure, or lessen the symptoms of cancer.

- Stop making claims that the Metabolic Plan of Care can treat, cure, or lessen the symptoms of Parkinson's disease.

- Stop making claims that the plans of care were FDA approved, designated as Regenerative Medicine Advanced Therapies, or designated safe and effective by the FDA.

You should remove any point-of-sale displays, posters, or other materials on display that include any of the deceptive claims.

You can find out more about the settlement at https://www.ftc.gov/enforcement/cases-proceedings/202-3146/golden-sunrise-nutraceutical-inc. Please contact me if you have any questions at [contact information].

I thank you for your business and greatly appreciate your cooperation in this matter.

Sincerely,


Stephen Meis
Former Medical Director
Golden Sunrise Nutraceutical, Inc.