UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | No. 1:20-cv-01060-DJC-SKO |
| Plaintiff, | |
| v. | ORDER |
| GOLDEN SUNRISE NUTRACEUTICAL, INC., et al., | |
| Defendants. | |

Plaintiff Federal Trade Commission ("FTC") brought suit against Defendants in 2020, alleging that Defendants had advertised their products using false and unsubstantiated claims that Defendants' products could treat, mitigate the symptoms of, or cure various ailments, including COVID-19, cancer, and Parkinson's disease. Plaintiff also alleged that Defendants misrepresented that the Food and Drug Administration ("FDA") had approved their products. Presently pending before the Court is Plaintiff's long-pending Motion for Summary Judgment. (ECF No. 65.) For the reasons stated below, Plaintiff's Motion for Summary Judgment is granted.

**BACKGROUND**

In July 2020, Plaintiff filed a complaint against Defendants Golden Sunrise Nutraceutical, Inc. ("GSN"), Golden Sunrise Pharmaceutical, Inc. ("GSP"), Huu Tieu, and

1

Stephen Meis. (Compl. (ECF No. 2).) Causes of Action One through Three of the Complaint alleged that Defendants violated sections 5(a) and 12 of the FTC Act based on their representations regarding the effectiveness of their products to treat, mitigate the effects of, or cure COVID-19, cancer, and Parkinson's Disease. (*See id.* at 24–26 (citing 15 U.S.C. §§ 45(a), 52).) Cause of Action Four alleges alleged that Defendants violated sections 5(a) and 12 of the FTC Act through Defendants' representation that their products had been reviewed and accepted by the FDA, that their products were designated by the FDA as Regenerative Medicine Advanced Therapies ("RMATs"), and that "[t]he FDA's designation signifie[d] that Defendants' products are safe and effective." (*See id.* at 26 (citing 15 U.S.C. §§ 45(a), 52).)

Shortly after the Complaint was filed, Plaintiff sought a Temporary Restraining Order. (ECF No. 3.) District Judge Dale A. Drozd granted Plaintiff's Motion, ordering Defendants to, among other things, refrain from "[f]urther violations of 15 U.S.C. §§ 45(a), 52, as alleged in the complaint[.]" (ECF No. 16 at 14–15.) A Preliminary Injunction was later entered by stipulation of the parties. (ECF Nos. 25, 26, 29, 30.)

On October 1, 2021, Plaintiff filed the Motion for Summary Judgment presently before the Court. (Mot. (ECF No. 65).) Defendants did not initially file a timely opposition to that motion. After further proceedings regarding substitution of Defendants' counsel and requests by Defendants for extensions of time to respond to the motion, District Judge Ana de Alba[1] issued an order denying further requests for extensions of time to file a response and stating that the court would "rule on the motion for summary judgment by Plaintiff Federal Trade Commission as unopposed." (ECF No. 109.) On January 31, 2023, a few weeks after Judge de Alba's order, Defendants sought to have the order set aside so that they could file an opposition to Plaintiff's summary judgment motion. (ECF No. 117.) Both the Motion for Summary Judgment and the Motion to Set Aside remain unresolved.

---

[1] In the intervening time since that order, Judge De Alba has since been elevated to the Ninth Circuit Court of Appeals.

Separate from this civil action and before the Complaint in this action was filed, Defendant Huu Tieu was indicted on two counts of mail fraud in violation of 18 U.S.C. § 1341 and three counts of introduction of misbranded drugs into interstate commerce with intent to defraud or mislead in violation of 21 U.S.C. §§ 331(a) and 333(a)(2). *United States v. Tieu*, 1:20-cr-00109-BAM (ECF No. 1). The charged conduct overlapped with the conduct at issue in this action. While the motions discussed above were pending in this action, Defendant Tieu reached a plea agreement with the government under which he pled guilty to a superseding information, which charged him with three counts of introduction of misbranded drugs into interstate commerce. *United States v. Tieu*, 1:20-cr-00109-BAM (ECF Nos. 83–85).

The Court has since permitted Defendants' former counsel to withdraw from Defendants' representation and permitted Defendants to file a response to the Motion for Summary Judgment. On August 29, 2025, Defendant Tieu, now proceeding without counsel, filed an Opposition to the Motion for Summary Judgment. (Opp'n (ECF No. 152).) Plaintiff has filed a Reply. (Reply (ECF No. 154).)

Defendant Tieu also filed two sur-replies to Plaintiff's Reply. (ECF Nos. 155, 156.) Under the Local Rules, after a reply is filed, no further briefing is permitted absent express leave of the Court. Local Rule 230(m). Defendant Tieu did not receive leave of the Court and, as such, these sur-replies are stricken as unauthorized and will not be considered.

## LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.*

The moving party bears the initial burden of informing the court of the basis for the motion and identifying the portion of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party to "establish that there is a genuine issue of material fact. . . . " *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585 (1986). The parties must "(A) cit[e] to particular parts of materials in the record. . . or (B) show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). When determining a motion for summary judgment, "the inferences to be drawn from the underlying facts. . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co.,* 475 U.S. at 587 (citation omitted). Ultimately, for the moving party to succeed, the Court must conclude that no rational trier of fact could find for the opposing party. *See id.*

A court may consider evidence as long as it is "admissible at trial." *Fraser v. Goodale,* 342 F.3d 1032, 1036 (9th Cir. 2003). "Admissibility at trial" depends not on the evidence's form, but its content. *Block v. City of L.A.,* 253 F.3d 410, 418-19 (9th Cir. 2001) (citation omitted). The party seeking admission of evidence "bears the burden of proof of admissibility." *Pfingston v. Ronan Eng'g Co.,* 284 F.3d 999, 1004 (9th Cir. 2002). If the opposing party objects to the proposed evidence, the party seeking admission must direct the court to "authenticating documents, deposition testimony bearing on attribution, hearsay exceptions and exemptions, or other evidentiary principles under which the evidence in question could be deemed admissible. . . ." *In re Oracle Corp. Sec. Litig.,* 627 F.3d 376, 385–86 (9th Cir. 2010). But if evidence falls short of the formalities of Rule 56, a district court still may exercise its discretion "to be somewhat lenient." *Sch. Dist. No. 1J, Multnomah Cnty., Or. V. ACandS, Inc.,* 5 F.3d 1255, 1261 (9th Cir. 1993) (collecting cases).

**UNDISPUTED FACTS**

In filing their Motion for Summary Judgment, Plaintiff included a lengthy Statement of Undisputed Facts. (PSUF (ECF No. 65 at 33–86).) Defendant Tieu, the only opposing Defendant, did not provide responses to Plaintiff's Statement of Undisputed Facts or provide his own chart listing facts he believes to be undisputed. (*See* Opp'n.) However, the Opposition does include a "Statement of Facts" section in which Defendant Tieu makes various factual assertions. (*See id.* at 6–21.) From this information, the Court has attempted to discern where there are disputes of fact.[2] Where Defendant Tieu has not addressed facts that Plaintiff asserts are undisputed in Plaintiff's Statement of Undisputed facts, the Court considers that fact to be undisputed. Fed. R. Civ. P. 56(e).

Between at least 2017 and the time the Complaint in this action was filed, Defendants GSP and GSN sold dietary supplement products. (PSUF ¶ 33.) These included products sold under the names Imunstem, Aktiffvate, AnterFeeron-1, AnterFeeron-2, CrProtein, DetoxHerb-1, DetoxHerb-2, DetoxHerb-NR, DetoxHerb-PI, KemoHerb-1, KemoHerb-2, KemoHerb-NR, KemoHerb-PI, HyProtein-1, HyProtein-2, HyProtein-3, HyProtein-4, and LyProtein. (*Id.* ¶¶ 37, 40, 43.) The primary ingredients in Defendants' products were herbs. (*Id.* ¶¶ 45–62.) Defendants' products were sold in product lines or collections of products referred to as "plans of care," which could cost tens of thousands of dollars (*Id.* ¶¶ 37–38, 40–41, 43–44.) Three such plans of care were the Emergency D-Virus Plan of Care, the Cancer Plan of Care, and the Metabolic Plan of Care. (*Id.* ¶¶ 37, 40, 43.)

In advertising these plans of care, Defendants made numerous claims about the health benefits of their products.[3] Defendants advertised the Emergency D-Virus Plan

---

[2] Defendant Tieu's Opposition is almost entirely concerned with whether Defendants had FDA approval for their products. Many of the factual assertions in his Opposition, as well as the documents attached, concern this issue. As such, most of the factual statements in Plaintiff's Statement of Undisputed Facts have not been disputed by Defendant Tieu.

[3] The scope of Defendants' claims regarding the purported effectiveness of their plans of care is far broader than can be included in this Order. The examples in this Order are illustrative of the

5

of Care as treating, mitigating the symptoms of, or curing COVID-19.  Among other things, Defendants placed billboards in California which advertised "NEW COVID 19 Treatment Emergency D-Virus Plan of Care" with contact information (*Id.* ¶ 79), claimed that the products in the Emergency D-Virus Plan of Care were "uniquely qualified to treat and modify the course" of COVID-19 (Compl. ¶ 40; Answer (ECF No. 40) at 6 ¶ 40), claimed the Emergency D-Virus Plan of Care would cause a reduction in symptoms from COVID-19 (*id.*), and made social media posts advocating for the Emergency D-Virus Plan of Care to treat, mitigate the symptoms of, or cure COVID-19 (PSUF ¶ 73–78; *see* ECF No. 6-3 at 1–10).  The Metabolic Plan of Care and Cancer Plan of Care (along with the products included in those lines) were advertised to treat, mitigate the symptoms of, or cure cancer. (*Id.* ¶¶ 113–114.) Defendants posted promotional videos claiming that these products were "cancer breakthroughs" with various effects in treating, mitigating the symptoms of, or curing cancer, along with reducing the effects of chemotherapy. (*Id.* ¶¶ 118–159.) Defendants also represented that the Metabolic Plan of Care was "preventative of cancer," and that the Cancer Treatment Plan caused effects that "arrest[ed] the fermentation process and the cancer." (*Id.* ¶¶ 162, 167; *see* ECF No. 3-5 at 131.) Defendants advertised the Cancer Treatment Plan as having survival rates and quality of life that compared favorably to chemotherapy treatment. (PSUF ¶ 169–172.) Defendants also advertised the Metabolic Plan of Care as a way to treat, mitigate the symptoms of, or cure Parkinson's disease. (PSUF ¶ 189; Pl's App. at 362:3–21, 365:11–16.[4]) Defendants posted videos claiming that Defendants' products, particularly Imunstem and Aktiffvate, were a "Parkinson's Breakthrough" that could provide improvements for patients with

---

representations made by Defendants.  Defendant Tieu's Opposition does not dispute that these representations were made and, in many cases, Defendants expressly admitted to making such representations.

[4] Plaintiff's Appendix attached to their Motion for Summary Judgment spans three ECF Nos. 65-1, 65-2, and 65-3.  Plaintiff has utilized a Bates-stamped pagination system for this Appendix that spans these docket entries.  The Court utilizes this pagination for consistency with the parties' briefing.

Parkinson's disease. (PSUF ¶¶ 191–209.) Defendants also published documents that similarly claimed that the Metabolic Plan of Care could cause a reduction of symptoms for a variety of conditions, including Parkinson's disease. (Compl. ¶ 67; Answer at 8 ¶ 67.)

In addition to claims regarding the effectiveness of Defendants' products as a treatment for these diseases, Defendants represented that their products were in compliance with FDA requirements. (PSUF ¶ 227.) Defendants specifically claimed that their Imunstem product had received FDA approval "to treat Serious or Life-threatening diseases or conditions." (*Id.* ¶ 228; ECF No. 3-5 at 46; *see* ECF No. 3-6 at 2.) Similarly, Defendants published documents stating that Imunstem was "approved as a prescription medicine and also for the indication to treat Serious or Life threatening conditions" and that "It qualified for both of these under the Regenerative Medicine Advance Therapy [("RMAT")] designation . . . ." (PSUF ¶ 231; ECF No. 3-5 at 49.) Defendants also represented that the products in their Emergency D-Virus Plan of Care had "proven themselves to the . . . FDA." (PSUF ¶ 233; ECF No. 3-5 at 49.)

## DISCUSSION

### I. Non-Opposition by Defendants GSP and GSN

Defendants GSP and GSN have not filed an opposition to Plaintiff's Motion for Summary Judgment. Defendant Tieu, in filing his Opposition to Plaintiff's Motion, also sought to file his Opposition on behalf of GSP and GSN. However, a corporation or other entity may appear only by an attorney. *See* Local Rule 183(a); *see also D–Beam Ltd. P'ship v. Roller Derby Skates, Inc.*, 366 F.3d 972, 973–74 (9th Cir. 2004) ("It is a longstanding rule that corporations and other unincorporated associations must appear in court through an attorney" (cleaned up)). As a non-attorney, Defendant Tieu may not appear or file an opposition on behalf of Defendants GSP and GSN. Thus, despite the long-pending nature of Plaintiff's Motion for Summary Judgment and the numerous opportunities provided to do so, Defendants GSP and GSN have not filed a valid opposition to Plaintiff's Motion.

The Court will treat that failure to file an opposition as non-opposition to the Court granting the Motion. *See* Local Rule 230(c) ("[F]ailure to file a timely opposition may also be construed by the Court as a non-opposition to the motion."). Based on this non-opposition, as well as for the reasons stated below, the Court will grant summary judgment to Plaintiff on their claims against Defendants GSP and GSN.

**II. Violations of Sections 5(a) and 12 of the FTC Act**

Each of Plaintiff's claims against Defendants is brought under sections 5(a) and 12 of the FTC Act. Section 5(a) prohibits "unfair or deceptive acts or practices in or affecting commerce[,]" while section 12 "prohibits the dissemination of any false advertisement in order to induce the purchase of food, drugs, devices, or cosmetics." *FTC v. Pantron I Corp.*, 33 F.3d 1088, 1095 (9th Cir. 1994) (internal citations and quotations omitted); *see also* 15 U.S.C. §§ 45(a), 52. Representations, omissions, or practices fall within the prohibition of section 5(a) and section 12 when: "(1) if it is likely to mislead consumers acting reasonably under the circumstances (2) in a way that is material." *FTC v. Cyberspace.com LLC*, 453 F.3d 1196, 1199 (9th Cir. 2006); *see Pantron I*, 33 F.3d at 1095. In this context, a representation is likely to mislead when "(1) such representation was false or (2) the advertiser lacked a reasonable basis for its claims." *FTC v. John Beck Amazing Profits, LLC*, 865 F. Supp. 2d 1052, 1067 (C.D. Cal. 2012). These are sometimes referred to as a "falsity theory" and "reasonable basis theory," respectively. A communication or statement may be considered likely to mislead based on "the net impression it creates[,]" even where it contains truthful disclosures." *Cyberspace.com*, 453 F.3d at 1200.

**A. Likely to Mislead Consumers**

**1. Claims One, Two, and Three – Reasonable Basis**

Here, Plaintiff's Claims One through Three each allege that Plaintiff violated sections 5(a) and 12 of the FTC Act, with the difference between each claim being whether the representations were made related to COVID-19, cancer, or Parkinson's disease. Plaintiff argues that Defendants' representations that their products were

capable of treating, mitigating symptoms of, or curing these diseases were material and likely to mislead consumers, under a reasonable basis theory. To find a representation was likely to mislead consumers under a reasonable basis theory, the Court first must determine "what level of substantiation the advertiser is required to have for his advertising claims."[5] *Pantron I*, 33 F.3d at 1096. "Then, the [Court] must determine whether the advertiser possessed that level of substantiation." *Id.*

### i. Requisite Level of Substantiation

In determining what level of substantiation is required, courts often utilize the *Pfizer* factors developed by the FTC, most fully described in *In re Thompson Med. Co.*, 104 F.T.C. 648 (1994). *See POM Wonderful, LLC v. FTC*, 777 F.3d 478, 490–91 (D.C. Cir. 2015) (discussing the *Pfizer* factors as identified in *Thomspon Medical*). These factors are: "[1] the type of product, [2] the type of claim, [3] the benefit of a truthful claim, [4] the ease of developing substantiation for the claim, [5] the consequences of a false claim, and [6] the amount of substantiation experts in the field would consider reasonable." *Pom Wonderful*, 777 F.3d at 490–91 (internal quotations and citations omitted). Given the substantial overlap in the types of claims Defendants made, these factors can be assessed jointly as they apply equally to each representation regardless of whether the claim is made in connection with COVID-19, cancer, or Parkinson's disease.

For the first and second factors, per Defendants' own admissions, the products in question are presented as treating, mitigating the symptoms of, or curing these

---

[5] As noted by the Plaintiff in their Motion, there are two types of advertising claims that can be addressed by a reasonable basis theory. "Establishment" claims contain a self-described level of substantiation. These are claims that contain express representations about the level of support for the claim. For example, an establishment claim might assert that a scientific study supports the effectiveness of a drug. For establishment claims, the Court does not need to determine a level of substantiation to apply, as the requisite level of substantiation is contained within the claim itself. "Non-establishment" or "efficacy" claims, on the other hand, do not provide the basis for claims within the representation. Plaintiff here asserts that Defendants' claims regarding their products concern the <u>efficacy</u> of their products to treat, mitigate the symptoms of, or cure COVID-19, cancer, and Parkinson's disease. (Mot. at 13 n.14.) As such, the Court must determine the level of substantiation required as it is not provided by the representation itself. *See FTC v. QT, Inc.*, 448 F. Supp. 2d 908, 959 (N.D. Ill., 2006).

9

diseases. (Pl's App. at 43–44, 68–69.) This means that these products were presented as a "drug" within the meaning of the FTC Act. *See* 15 U.S.C. § 55(c). This weighs in favor of a higher degree of substantiation. Given the significance of viable treatments for these diseases to those afflicted by them, the benefit of Defendants' claims, if truthful, would be substantial.[6] On the flip side, the consequences of a false claim are significant. False claims could result in afflicted individuals not obtaining proper medical care for their ailments, believing that they were receiving valid treatments when they were not. Though there are undoubtedly high costs in substantiating Defendants' claims, both the benefits of truthful claims and the consequences of false claims counsel for the necessity of that process. Finally, given the nature of the claims Defendants put forward, "competent scientific or medical tests or studies" are necessary to substantiate Defendants' claims. *Pantron I*, 33 F.3d at 1096 n.23. In further support of this, Plaintiff has put forward uncontested and uncountered expert testimony that human clinical trials would be the substantiation experts in the field would find reasonable.[7] (Pl's App. at 447–48 (Declaration of John Schoggins, Ph.D.), 850–52 (Declaration of Katherine Tkaczuk, M.D.), 1269–70 (Declaration of Ramsey Falconer, M.D.).)

Based on the above, it is clear that Defendants' claims require some level of human clinical trial as substantiation. Defendant Tieu does not contest that this is the necessary level of substantiation to support Defendants' representations. (*See generally* Opp'n.) Accordingly, the Court will apply this level of substantiation in determining if Defendants possessed the requisite substantiation in making their advertising claims.

---

[6] The Court notes that this case was originally filed in July 2020, during the height of the COVID-19 pandemic and before vaccines were widely available.

[7] Plaintiff presents separate experts related to the COVID-19, cancer, and Parkinson's disease claims. Each expert provides different specifics regarding the exact evidence they would expect to substantiate Plaintiff's claims. Despite the differences, each experts agree that some form of human clinical trials would be expected. Given that Defendants do not have substantiation of this variety, the exact distinctions between the statements of Plaintiff's experts are insignificant.

### ii. Substantiation Possessed by Defendants

In moving for summary judgment, Plaintiff asserts that Defendants lacked any form of competent and reliable scientific evidence to support their claims. Defendants' own admissions clearly suggest that this is accurate. In response to Plaintiff's request for admissions, Defendants admitted that there was no clinical trial, study, or literature that addressed or substantiated that the relevant products could treat, mitigate the symptoms of, or cure:

- COVID-19 (Pl's App. at 122 ¶ 48–49, 123 ¶ 54–55, 167 ¶ 48–49, 168 ¶ 54–55, 212 ¶ 48–49, 213 ¶ 54–55),
- cancer (*id.* at 142 ¶ 151–152, 143 ¶ 157–58, 187 ¶ 151–152, 188 ¶ 157–58, 232 ¶ 151–152, 233 ¶ 157–58), or
- Parkinson's disease (*id.* at 152 ¶ 197–98, 153 ¶ 203–04, 197 ¶ 197–98, 198 ¶ 203–04, 242 ¶ 198, 243 ¶ 203-04).

In his Opposition, Defendant Tieu mentions the existence of "patient Medical Record Results, which included fifty-four (54) COVID-19 patients."[8] (Opp'n at 9.) This appears to be simply a collection of purported results from usage of Defendants' products that Defendants collected. (ECF No. 152 at 221–23.) This is not a competent and reliable scientific medical test or study, nor does it constitute human clinical trials, which Defendants admitted had never been conducted. Similarly, contained within the documents attached to Defendant Tieu's Opposition is a list of 42 individuals with cancer who utilized Defendants' products, along with purported outcomes. (*Id.* at 163–72.) This is also not a competent and reliable scientific medical test or study, but a self-maintained log with minimal to no supporting information.

---

[8] Defendant Tieu does not appear to raise this information as an argument that Defendants possessed sufficient substantiation for their claims, but to challenge whether they had received FDA approval, as discussed further below. In fact, Defendant Tieu's Opposition does not appear to raise any arguments related to the adequate substantiation of their claims at issue in Claims One through Three. Nevertheless, the Court addresses this information for the sake of completeness and full consideration. Plaintiff also objects to the admissibility of the documents provided by Defendant Tieu. These objections may be valid, but the Court instead addresses this information on its merits as it is ultimately insufficient to create a genuine dispute of material fact, regardless of its admissibility.

11

Based on Defendants' admissions and Defendant's failure to provide any evidence to the contrary, there is no genuine dispute of material fact as to whether Defendants possessed sufficient substantiation for their claims.

### 2. Claim Four – Falsity

In their fourth claim, Plaintiff asserts that Defendants violated sections 5(a) and 12 of the FTC Act through their representations that (1) the FDA had reviewed and accepted Defendants' products, (2) the FDA designated Defendants' products as Regenerative Medicine Advanced Therapies, and (3) that designation signified that the products were safe and effective. (Compl. ¶ 82.) Plaintiff asserts that representations were likely to mislead consumers under a falsity theory. (*Id.* ¶ 83; Mot. 18–19.)

Plaintiff alleges that Defendants falsely claimed that the FDA had reviewed and accepted Defendants' products. Plaintiff mainly points to an advertising announcement that was placed on Defendants' website on July 1, 2018, that states, in relevant part, that "the [FDA] has approved ImunStem . . . as the first botanical/herbal medication to treat serious or life-threatening diseases or conditions."[9] (Pl's App. at 374:10–14.) Plaintiff also notes that Defendants had repeatedly made similar representations, such as that Defendants' products had "proven themselves" to the FDA. (PSUF ¶ 233.) Plaintiff has presented substantial evidence that Defendants' products never received any form of FDA approval, and that Defendants had been repeatedly advised of this fact. (Pl's App. at 371–72 (deposition from Defendant Tieu acknowledging that in 2013 the FDA had informed Defendants that clinical studies were required for FDA approval), 300–01 (September 18, 2018 advising Defendants that the NDA number being utilized "was not an approved application by FDA and the product should not be listed as an approved drug), 302 (November 15, 2018 email

---

[9] This is not the only purported reference to Imunstem as having FDA approval. (*See* PSUF ¶¶ 232, 234.) But the July 1, 2018 announcement is the main misrepresentation that Plaintiff notes.

12

stating that Defendants FDA application "was never approved and cannot be used as a marketing authorization for the listed product.").)

In his Opposition, Defendant Tieu suggests that he did have FDA approval for Imunstem.  (*See* Opp'n at 11 ("It is Tieu's contention that Plaintiff FTC did not follow through in their investigation of the FDA approval of ImunStem Rx only product."); 12 ("Tieu then received . . . notification that ImunStem Rx Only Prescription Drug and Plans of Care had been reviewed, evaluated, cleared, approved, substantiated and accepted by the FDA."); 18 ("As ImunStem was approved, by compliance with the FDA regulations . . . ."; 22 ("ImunStem was the only product for which FDA approval was requested and obtained . . . .").)  These assertions are supported only by evidence of Defendants' apparent attempts to apply for approval.  Moreover, these statements are directly contradictory to the factual basis agreed to by Defendant Tieu in connection with his guilty plea.  That factual basis, signed and agreed to by Defendant Tieu, states that Imunstem and other drugs "were not FDA approved, and no Golden Sunrise product had ever been approved by the FDA for any purpose or received an RMAT designation from the FDA."[10]  *United States v. Tieu*, 1:20-cr-00109-BAM (ECF No. 83 at A-1–A-2) (emphasis added).  Thus, despite Defendant Tieu's suggestions to the contrary, all substantive evidence and his own admissions establish that Defendants' representations that the FDA had reviewed and approved Defendants' products were false, and there is no genuine dispute of fact as to their falsity.

The evidence presented similarly establishes that Defendants falsely advertised that their products were designated as RMATs.  Plaintiff alleged, and Defendants admitted, that Defendants had advertised their "Emergency D-Virus treatment plan"

---

[10] The plea agreement and factual basis therein may constitute hearsay as to the corporate Defendants (but not as to Defendant Tieu.  *See* Fed. R. Evid. 801(d)(2)).  But even if it is properly considered hearsay, the plea agreement and factual basis are nevertheless admissible under Federal Rule of Evidence 807.  *In re Slatkin*, 525 F.3d 805, 812 (9th Cir. 2008) (finding a plea agreement fell within the residual hearsay exception as it was evidence of a material fact, was uniquely probative of intent, and admission of the evidence furthered the general purposes of the Federal Rules of Evidence and the interests of justice.)

as designated as an RMAT.  (Compl. ¶¶ 23–24; Answer ¶¶ 23–24.)  In addition to Defendant Tieu's admission above that "no Golden Sunrise product had ever . . . received an RMAT designation from the FDA[,]" *United States v. Tieu*, 1:20-cr-00109-BAM (ECF No. 83 at A-1–A-2), Plaintiff also provides documentary evidence showing that Defendants were informed that their RMAT designation application had been denied (Pl's App. at 299 (April 6, 2017 letter denying RMAT designation), and also cite to testimony from Defendant Tieu's deposition testimony wherein he admitted that Defendants' RMAT application had been denied (*id.* at 373:13–19).  Defendant Tieu has not submitted any evidence establishing that Defendants' products ever received an RMAT designation as had been suggested in their advertising materials.  As such, there is no genuine dispute of material fact as to the falsity of this claim.

Given the above, Defendant Tieu has not raised a genuine dispute of material fact as to the falsity of Defendants' claims of FDA approval for their products.[11]  As such, Plaintiff has established these claims were likely to mislead consumers acting reasonably under the circumstances.

**B. Materiality**

Having determined that Defendants' claims were likely to mislead consumers acting reasonably under the circumstances, the Court must then turn to whether the representations were material.  To determine whether a representation is material, the Court must consider whether the representation "involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product." *Cyberspace.com*, 453 F.3d at 1201 (quoting *In re Cliffdale Assoc., Inc.*, 103 F.T.C. 110, 165 (1984)).

---

[11] The Court does not address Plaintiff's last argument of falsity on the grounds that Defendants falsely claimed "that these FDA designations signified their products were safe and effective" as this allegation is necessarily false given the fact that Defendants did not receive FDA approval for any product.

14

There can be no doubt regarding the materiality of the representations here. Due to their nature as express claims and claims regarding health and safety, Defendants' representations are presumed to be material. *Pantron I*, 33 F.3d at 1095–96; *FTC v. Wellness Support Network, Inc.*, No. 10-cv-04879-JCS, 2014 WL 644749, at *17 (N.D. Cal. Feb. 19, 2014). Even beyond these presumptions, which Defendant Tieu has not contested, Defendants' representations regarding the ability of their products to treat serious and potentially deadly conditions – as well as the safety of those products – clearly involve information important to consumers that is likely to affect their choice of product. As such, these representations are clearly material, and there is no genuine dispute as to their materiality.

\* \* \* \*

Given the above, Defendants' representations made to advertise Defendants' products were both likely to mislead reasonable consumers and material. As such, these representations violated sections 5(a) and 12 of the FTC Act. Summary judgment is granted in Plaintiff's favor.

### III. Defendant Tieu's Individual Liability

Having found the representations violated the FTC Act, the Court must also determine whether summary judgment is also warranted as to Defendant Tieu individually. An individual may be held individually liable for injunctive relief under the FTC Act where the individual either participated directly in the acts or had authority to control them. *FTC v. Medlab, Inc.*, 615 F. Supp. 2d 1068, 1081 (N.D. Cal. 2009) (quoting *FTC v. Garvey*, 383 F.3d 891, 900 (9th Cir. 2004)). As Plaintiff only seeks injunctive relief, not restitution, against Defendant Tieu, Plaintiff need not establish Defendant Tieu's knowledge. *See FTC v. Garvey*, 383 F.3d 891, 900 (9th Cir. 2004).

Here, there is no dispute that Defendant Tieu was both personally involved in the acts in question and had authority to control them. Defendant Tieu admitted that he operated or participated in operating the goldensunrisenutraceutical.com and

goldensunrisepharmaceutical.com websites (PSUF ¶¶ 247, 250; Pl's App. at 88 ¶ 19), "created the contents or contributed to" those websites, with nothing being posted to either website without Defendant Tieu's approval (Pl's App. at 332:24–333:2, 334:2–12), and operated and participated GSN and GSP's social media presence (*id.* at 336:15–338:24). Defendant Tieu does not dispute any of these facts, present contrary evidence, or contest that he was personally involved in the acts and had authority to control them.[12] Accordingly, there is no genuine dispute of material fact as to Defendant Tieu's participation in the acts and authority to control them. As such, Plaintiff is entitled to summary judgment as to their claims against Defendant Tieu individually.

**IV. Common Enterprise**

Plaintiff asks that this Court recognize GSP and GSN as part of a common enterprise so that GSP and GSN are held jointly and severally liable. *See FTC v. Network Servs. Depot, Inc.*, 617 F.3d 1127, 1142–43 (9th Cir. 2010). To be considered a common enterprise, entities must "exhibit either vertical or horizontal commonality[,]" which may be demonstrated "by a showing of strongly interdependent economic interests or the pooling of assets and revenues." *Id.* In determining whether a common enterprise exists, courts "consider[] factors such as: common control; the sharing of office space and officers; whether business is transacted through a maze of interrelated companies; the commingling of corporate funds and failure to maintain separation of companies; unified advertising; and evidence that reveals that no real distinction exists between the corporate defendants." *FTC v. Johnson*, 156 F. Supp. 3d 1202, 1207 (D. Nev. 2015).

Here, the undisputed evidence establishes that GSP and GSN are a common enterprise. (*See* PSUF ¶¶ 16–32.) More importantly, Defendants expressly stated in

---

[12] As Plaintiff notes, while it is not necessary for Plaintiff to establish Defendant Tieu's knowledge to obtain injunctive relief, the presented evidence leaves little doubt that Defendant Tieu had knowledge of the material misrepresentations or was recklessly indifferent to the truth or falsity of those misrepresentations.

16

their Answer that "they have operated as a common enterprise . . . ." (Answer at 3 ¶ 10.) Defendant Tieu also does not contest this in his Opposition. Accordingly, the Court finds that GSP and GSN are part of a common enterprise and thus can be held jointly and severally liable.

**V. Remedy**

In pursuing summary judgment, Plaintiff no longer seeks monetary relief. (Mot. at 4 n.7; *see* ECF No. 1-4.) Instead, Plaintiff now only seeks permanent injunctive relief. (Mot. at 3–4.) Under section 13(b) of the FTC Act, the Court has the authority to grant injunctive relief. 15 U.S.C. § 53(b); *see AMG Cap. Mgmt., LLC v. FTC*, 593 U.S. 67 at 1348–49 (2021). "[I]njunctive relief is appropriate when there is a cognizable danger of recurrent violation, something more than the mere possibility." *John Beck Amazing Profits*, 888 F. Supp. 2d at 1012. Factors considered include "the degree of scienter involved, whether the violative act was isolated or recurrent, whether the defendant's current occupation positions him to commit future violations, the degree of harm consumers suffered from the unlawful conduct, and the defendant's recognition of his own culpability and sincerity of his assurances, if any, against future violations." *FTC v. AMG Servs., Inc.*, 558 F. Supp. 3d 946, 966 (D. Nev. 2021); *see FTC v. Noland*, 672 F. Supp. 3d 721, 806 (D. Ariz. 2023).

Here, the factors weigh in favor of granting permanent injunctive relief. The evidence presented suggests that Defendants were repeatedly made aware of the fact that their products lacked adequate substantiation and continued to regularly make these claims. GSP and GSN are companies specifically established to sell similar products. Moreover, the statements made by Defendant Tieu in his Opposition indicate not a recognition of his own culpability or assurance against future violations, but that Defendant Tieu does not appreciate why Defendants' actions violated the FTC Act. Finally, the potential harm to consumers through continued conduct would be significant, as it could encourage those with serious conditions to forego

treatments with proven effectiveness.  In light of these factors, the Court finds that permanent injunctive relief is appropriate.

The scope of the proposed relief requested also seems appropriate.  In their proposed order Plaintiff seeks, among other things, to (1) enjoin Defendants making representations regarding the ability of a product to treat, mitigate the symptoms of, or cure diseases unless Defendants possess competent and reliable scientific evidence substantiating the representation, (2) enjoin Defendants making representations about the health benefits, performance, efficacy, safety, or side effects of the covered products, (3) required Defendants to preserve records related to any future human clinical test or study, (4) enjoin Defendants from misrepresenting FDA approval of covered products, (5) enjoin Defendants from collecting or transferring debts arising from the sale of covered products, and (6) requiring notice be provided to consumers and resellers.  The proposed order also provides for compliance monitoring.  The scope of this requested injunctive relief is reasonable.  While it does provide some "fencing in" to prevent similar violations in the future, such injunctive relief is permissible for violations of the FTC Act and is relatively limited here.  *See FTC v. Grant Connect, LLC*, 763 F.3d 1094, 1097 (9th Cir. 2014) ("Those caught violating the FTC Act must expect some fencing in.  Accordingly, injunctive relief under the FTC Act may be framed broadly enough to prevent respondents from engaging in similarly illegal practices in future advertisements." (cleaned up)).

With that said, the proposed order, as filed, appears to be in the form of a stipulation between the Defendants and Plaintiff.  (*See* ECF No. 65-4.)  While this does not affect the content of the order, it impacts the language therein.  (*See, e.g.*, *id.* at 4 (referencing "Stipulating Defendants"), 5 (same), 7 (same).)  Accordingly, while the Court finds that summary judgment in Plaintiff's favor and permanent injunctive relief are appropriate, it will not yet enter the permanent injunction.  Instead, Defendants are directed to file a new proposed order that appropriately reflects that the order is not entered by stipulation of the parties.

**CONCLUSION**

For the reasons stated above, IT IS HEREBY ORDERED that:

1. Defendant Tieu's Unauthorized Sur-Replies (ECF Nos. 154, 155) are STRICKEN;
2. Given the Court's order permitting Defendants to file an Opposition (*see* ECF No. 145), Defendants' Motion to Set Aside (ECF No. 117) is DENIED AS MOOT.
3. Plaintiff's Motion for Summary Judgment (ECF No. 65) is GRANTED. Within fourteen (14) days of this order, Plaintiff shall file a revised proposed order as discussed above.

IT IS SO ORDERED.

Dated:    **September 30, 2025**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC1 – FTC20-cv-01060.MSJ

19